[No. 11512. In Bank. — July 30, 1887.]

## THOMAS GOLSON et al., Appellants, v. A. H. DUNLAP et al., Respondents.

Purchase by Trustee. — A trustee cannot purchase from himself, either directly or indirectly. If he attempts to do so, the transaction is voidable at the election of the *cestui que trust*.

Id. — But a trustee may purchase from his *cestui que trust* if the transaction is fair in all respects.

Id. — Adequacy of Consideration. — As a general rule (subject to some exceptions), it is essential to the fairness of such a transaction that the consideration should be adequate. While inadequacy of consideration is not itself the ground for setting the sale aside, yet, taken by itself, it raises a presumption of unfairness which, unless rebutted, renders the transaction constructively fraudulent. Section 2235 of the Civil Code does not change this rule.

Id. — It is not necessary that the highest possible price should be obtained; nor is a subsequent increase in value material. The fair value at the time is what is required.

Id. — Findings. — Inadequacy of consideration is one of the facts constituting the fraud, and when put in issue must be found.

Decree of Distribution. — If it be assumed that the above question may be litigated on the application for distribution, yet, if not so litigated, the decree of distribution does not conclude the question.

Appeal from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Smith & Hupp*, and *Chapman & Hendricks*, for Appellants.

The sale in question is presumed to have been entered into without sufficient consideration, and under undue influence; and the burden of proof is upon the defendants to show, and show clearly, that the transaction was fair, without undue influence, and for full consideration. (Civ. Code, sec. 2235; 1 Perry on Trusts, sec. 197; 2 Pomeroy's Eq. Jur., secs. 926–927; 1 Story's Eq. Jur., sec. 317.) There can be no question that as to this transaction the executor was a trustee, though he gave a

fair price, and even if there had been no agreement before the sale. (*O'Connor* v. *Flynn*, 57 Cal. 293.) The decree of distribution in the probate proceedings is not a bar to the present action. (*O'Connor* v. *Flynn*, 57 Cal. 293; *Guerrero* v. *Ballerino*, 48 Cal. 119; *Olivas* v. *Olivas*, 61 Cal. 382; *Estate of Hudson*, 63 Cal. 454; *Dean* v. *Superior Court*, 63 Cal. 473; *Thompson* v. *Sampson*, 64 Cal. 330.)

*C. E. Thom*, and *Bicknell & White,* for Respondents.

HAYNE, C.—Action by devisees to set aside a sale to executors. The executors, who were old residents of Los Angeles, where the property is situated, caused their attorneys to write to Texas, where the devisees resided, that after settling up most of the estate, there remained " certain odds and ends of land " which would have to be sold or divided; that it was for the best interest of the estate that these odds and ends should be sold together; and that they were willing to become the purchasers at a reasonable figure, but that an investigation must first be had by the parties interested, and requesting that an agent be sent out with power to act, and offering to advance the expenses of the trip. The devisees thereupon sent out an agent with power to act. This agent could neither read nor write. He was accompanied, however, by a friend who was a competent business man. It is not entirely clear as to what was the function of this latter. He did not hold the power of attorney, and testifies that he was not the agent of the devisees. He seems to have been some sort of relative of the decedent, and to have come along to advise the agent. After remaining a week in Los Angeles, a bargain was concluded, whereby the interests of the devisees were sold for ten thousand dollars. A deed was thereupon made to Susan Dunlap, the wife of one of the executors. After this the executors, acting under a power of sale in the will, made

a deed of the same property to Susan Dunlap.   A week
after this deed the property was distributed to Susan
Dunlap by decree of the probate court, and within a
month thereafter she conveyed to the executors.   It is
admitted that she acted for the executors throughout the
transaction.

The two conveyances to Susan Dunlap illustrate an
important distinction with reference to attempts of trus-
tees to acquire the trust estate, which distinction has
been frequently pointed out, but not always observed.

Where the trustee is charged with the duty of selling
the property, and he does not deal directly with the *ces-
tui que trust*, there, whether the trustee holds the legal
title or not, and whether he takes a conveyance directly
to himself or acts through the intervention of a third
person, the sale, although not as a general rule abso-
lutely void (*Blockley* v. *Fowler*, 21 Cal. 329; *Boyd* v.
*Blankman*, 29 Cal. 19), is voidable at the election of the
*cestui que trust* (*Blockley* v. *Fowler*, 21 Cal. 329; *Guerrero*
v. *Ballerino*, 48 Cal. 118; *Tracy* v. *Colby*, 55 Cal. 71),
without reference to the question of the adequacy of the
price.   (*San Diego* v. *S. D. etc. R. R. Co.*, 44 Cal. 106;
*O'Connor* v. *Flynn,* 57 Cal. 293.)   These decisions are in
accordance with the great preponderance of authority
elsewhere.   (See *Ex parte Bennett*, 10 Ves. 393; *Hamilton*
v. *Wright*, 9 Clark & F. 123; *Michoud* v. *Girod*, 4 How.
503; *Wormley* v. *Wormley*, 8 Wheat. 441; *Davoue* v. *Fan-
ning*, 2 Johns. Ch. 260, 261; *Van Epps* v. *Van Epps*, 9
Paige, 241; *Jewett* v. *Miller*, 10 N. Y. 405; S. C., 65 Am.
Dec. 751; *Brothers* v. *Brothers*, 7 Ired. Eq. 150; *Scott* v.
*Freeland*, 7 Smedes & M. 418; S. C., 45 Am. Dec. 310;
*Romaine* v. *Hendricksen's Ex'rs*, 27 N. J. Eq. 164, 165;
*Thorpe* v. *McCullum*, 1 Gilm. 626, 627.)   Whether an
exception obtains where permission to buy is granted by
the court, or by the *cestui que trust* having full knowl-
edge of the situation, need not be considered, there being
no permission of the court in this case, and nothing to

show that the devisees had any knowledge of the executor's deed.

This deed from the executors to Susan Dunlap may therefore be dismissed from consideration.

The distinction between the above class of cases and those in which the trustee purchases directly from his *cestui que trust*, although not always observed, has been frequently pointed out. (See Lewin on Trusts, 463; 2 Pomeroy's Eq. Jur., sec. 957; *Ex parte Lacey*, 6 Ves. 626; *Cowee* v. *Cornell*, 75 N. Y. 100; *Brown* v. *Cowell*, 116 Mass. 465.) In this latter class of cases, inquiry will be made into the fairness of the transaction, and under proper conditions it will be sustained. In the language of Lord Eldon: "A trustee may buy from the *cestui que trust*, provided that there is a distinct and clear contract, ascertained to be such after a zealous and scrupulous examination of all the circumstances, provided the *cestui que trust* intended the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him in the character of trustee." (*Coles* v. *Trecothick*, 9 Ves. *247.)

It is obvious that an investigation of questions of this kind is a very delicate and difficult affair, and courts of equity have emphasized the strictness with which such transactions should be viewed. As was said in *Whelan* v. *Whelan*, 3 Cow. 576, 577, by Woodworth, J., adopting the language of Sir Samuel Romilly: "If the court sees that any arts or stratagems, or any undue means, have been used; if it sees the least speck of imposition at the bottom; if there be the least *scintilla* of fraud,—this court will and ought to interpose." Nevertheless, it is well settled that under proper conditions the transactions would be sustained.

Applying this rule, can the sale from the devisees to the executors be allowed to stand? One of the important elements of this inquiry is as to the adequacy of the consideration.

Was there inadequacy of consideration? This question is presented by the record in distinct outlines. The complaint alleges that the odds and ends of land aggregated in value the sum of $47,008, of which the share of the devisees was $39,273. The court made no finding upon this issue, but simply stated that there was no evidence "from which the court is able to find the actual value of the residue of the estate at the time of the conveyance." This cannot operate as a finding. (*Speegle* v. *Leese*, 51 Cal. 415; *Campbell* v. *Buckman*, 49 Cal. 367.) If no evidence was introduced, the court should have found the fact against the parties upon whom was the burden of proof, or in other words, in accordance with the presumption, which in this instance was against the defendants.

It is contended in support of the judgment, however, that the issue was immaterial, and that therefore no finding upon it was necessary. This proposition is based upon section 2235 of the Civil Code, which is as follows: —

"Sec. 2235. All transactions between a trustee and his beneficiary during the continuance of the trust, or while the influence acquired by the trustee remains, are presumed to be entered into by the latter without sufficient consideration and under undue influence."

The argument is, that the words "sufficient consideration" in this section do not mean an adequate consideration, but a consideration which is sufficient to support a contract between ordinary parties; and that if any valuable consideration be shown, the presumption established by the section is rebutted, and the transaction must be held valid.

It is to be observed of this proposed construction that it would place all trustees upon a level, and measure their obligations by the same standard, and that this standard is not a high one. But the analogies of the law of trusts have been extended to so many classes of cases, and the

term "trustee" is applied to so many persons whose obligations certainly vary in considerable degree, that we think it could hardly have been intended to apply any such Procrustes rule to them all. A fixed standard might gratify a love of symmetry and be easy of application, but would not further the ends of justice. In our view, the words "sufficient consideration" mean not sufficient to support a contract between ordinary parties, but sufficient to support the particular transaction; and the presumption raised by the section can be rebutted only by proof of such a consideration. With reference to what consideration is sufficient to support the particular transaction, resort must be had to the rules of courts of equity. These rules were flexible in character and adapted to the varying circumstances which chance or ingenuity might present. With respect to adequacy of consideration, no unbending rule applicable to all cases can be framed, because there are classes of cases which have features which prevent the operation of a fixed rule. The leading text-writers speak of adequacy of consideration as essential. (See 1 Perry on Trusts, sec. 195; 2 Pomeroy's Eq. Jur., sec. 958; 1 Story's Eq. Jur., sec. 311. Compare also *Grosvenor* v. *Sherratt*, 28 Beav. 663; *Edwards* v. *Meyrick*, 2 Hare, *70; *Boyd* v. *Hawkins*, 2 Dev. Eq. 331; *Coffee* v. *Ruffin*, 4 Cold. 515; *Rose* v. *Mynatt*, 7 Yerg. 36; *Kisling* v. *Shaw*, 33 Cal. 440; *Rubidoex* v. *Parks*, 48 Cal. 220.) But this is too sweeping. For there may be cases in which no valuable consideration at all is necessary. Thus while a gift from a *cestui que trust* to his trustee is exceedingly difficult to sustain (see *Hatch* v. *Hatch*, 9 Ves. *296), it will in proper cases be upheld. (See *Hunter* v. *Atkins*, 3 Mylne & K. *113; *Harris* v. *Tremenheere*, 15 Ves. 39; *Marshall* v. *Stephens*, 3 Humph. 159.) The principle upon which such cases rest is, that it was the intention of the *cestui que trust* to part with his property without consideration; and if a court of equity can

clearly see that such intention was induced by laudable motives, and not by want of knowledge of the situation, or by undue influence or deceptive arts on the part of the trustee, it will allow the intention to prevail. So there may be cases where, owing to special circumstances, it is necessary for the *cestui que trust* to sell without delay, and no one can be found who will buy, and the trustee, acting in entire good faith, gives more for the property than any one else will give. In such case, it is for the interest of the *cestui que trust* to allow the trustee to buy, and it would be hard measure to set aside the sale merely because the sum which the trustee was able or willing to give was less than the value of the property,—the transaction being unexceptionable in other respects. It is too sweeping, therefore, to say that in all cases there must be an adequate consideration, if the word is to be used in any ordinary acceptation.

On the other hand, the element of adequacy of consideration is most important. The great object of the rule is to prevent imposition on the part of trustees; and, in one sense, this may be said to be to prevent trustees from acquiring the property of their *cestuis que trust* for an inadequate consideration. To disregard the question of inadequacy, therefore, is to attempt to apply a rule while shutting one's eyes to its object and purpose. The writers above referred to are not very far out of the way in speaking of adequacy of consideration as essential. It is safe to say that while mere inadequacy of price is not itself the ground upon which a transaction between trustee and *cestui que trust* is set aside, yet that any considerable inadequacy, taken by itself, raises a presumption of imposition by the trustee, which is only to be rebutted by clear proof of special circumstances showing the propriety of the transaction. It certainly cannot be ignored, and the transaction sustained without reference to it, as was done in the court below.

Nor can it be said that this is a mere matter of evidence. It rises to the rank of a probative fact, such as has frequently been held by the court to be proper in findings. The ultimate ground upon which transactions between trustees and *cestui que trust* are set aside is fraud, actual or constructive, as the case may be; and the rules of pleading require that the facts constituting the fraud (of which this is one) shall be set forth. Being properly pleaded, such facts must be found. For, under our system, whatever is properly in issue must be found, unless there are other issues which effectually and finally dispose of the case.

It is proper to say, for the guidance of the court below upon a retrial, that it is not the highest possible price that must be taken as the standard, but the fair, reasonable value of the property. Speaking of transactions with expectant heirs and reversioners, a class to whom, on grounds of public policy, the greatest protection is afforded (compare 1 Perry on Trusts, sec. 188), Judge Story says: " It is not necessary to establish in evidence that the full value of the reversionary interest, or other expectancy, has been given according to the ordinary tables for calculations of this sort. It will be sufficient to make the purchase unimpeachable if a fair price, or the fair market price, be given therefor at the time of the dealing." (1 Story's Eq. Jur., sec. 336.)

As remarked in the foregoing extract, the time to be taken is the time of the dealing. A subsequent advance is not to be regarded. In the leading case of *Fox* v. *Mackreth*, 1 Lead. Cas. Eq. 188, Lord Thurlow would not give any weight to the circumstance that the trustee happened to sell at an advanced price, saying: " The money would be due, not in consequence of what Mackreth afterward sold it for, but what Fox lost by it at the time." So in *Coles* v. *Trecothick*, 9 Ves. 246, where the trustee had subsequently sold for a greater sum, Lord Eldon said: " Inadequacy of price does not depend upon

a person giving a *pretium affectionis* from any peculiar motive, beyond what any other man would give, the reasonable price. . . . . Accidental subsequent advantage made of a bargain is nothing." The fair value at the time, under all the circumstances, must be the criterion.

Finally, it is contended that the decree of distribution to Susan Dunlap operates as an estoppel against the plaintiffs. But if we assume in favor of the respondents that this question of setting aside the deed for fraud could have been presented and considered upon the application for distribution, it nevertheless was not so presented or considered. And the rule is, that a party having an equitable defense may let judgment go at law and proceed in equity. (*Lorraine* v. *Long*, 6 Cal. 452; *Hough* v. *Waters*, 30 Cal. 310.)

It is unnecessary, in the view we take, to consider the other points made.

We therefore advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, judgment and order reversed, and cause remanded for a new trial.

Rehearing denied.