[S. F. No. 3983.   Department One.—April 17, 1905.]

## P. F. DUNDON, Respondent, v. J. M. McDONALD, Appellant, and PACIFIC BANK, Respondent.

BANKS—PLEDGE OF BONDS—ASSIGNMENT TO AGENT OF CREDITOR—PUR-
CHASE BY PRESIDENT—TRUST—CONSTRUCTIVE FRAUD — ACTION BY
DEPOSITOR.—Where railway bonds belonging to an insolvent bank,
which had been pledged by it for a debt, were, upon settlement of
the debt by the bank, assigned by it to the agent of the creditors for
a specified sum, but the assignment was secretly taken for the
benefit of the president of the bank,—who paid such sum out of
his own money,—a depositor may, on behalf of himself and other
depositors, maintain an action to enforce a trust in the bonds so
purchased for constructive fraud.

ID.—PROPER JUDGMENT — SUPPORT OF FINDINGS — APPEAL. — Judgment
upon the findings in favor of the plaintiff was properly rendered,
directing a sale of the bonds, and the payment to the president
defendant merely of the amount of his disbursement, with interest,
less dividends received, and payment of the residue to the bank, less
the costs and counsel fees of the plaintiff; and where the findings
are supported by the evidence, the judgment for the plaintiff and
an order denying a new trial to the president, defendant, will be
affirmed upon appeal.

ID.—RATIFICATION OF ASSIGNMENT—SUBSEQUENT KNOWLEDGE OF PUR-
CHASE BY PRESIDENT.—The fact that the directors of the bank
expressly ratified the assignment of the bonds to the agent of its
creditor for a specified sum, upon the settlement of its debt, does
not tend to show a ratification of the purchase by its president,
where the fact that its president was interested in the assignment,
and paid the amount specified, was then unknown to them.   Their
subsequent knowledge of the fact could not affect the prior ratifica-
tion, and is only material as tending to show a subsequent rati-
fication, or to justify a finding that a request to the directors to
sue would be unavailing.

ID.—DEMAND TO SUE — CROSS-COMPLAINT BY BANK — WAIVER.—Aside
from the question of the effect of the allegations and findings, the
objection that a demand was not made upon the directors of the
bank to bring the suit is obviated by the filing of a cross-complaint
by the bank.

ID.—EVIDENCE—MARKET VALUE OF BONDS PURCHASED—HARMLESS RUL-
ING.—It was error to exclude evidence as to the market value of
the bonds purchased by the president, but the only consequence
of its exclusion is that it must be assumed, as claimed by him, on
the question upon ratification or actual fraud; but that fact alone
could not prove ratification, and where the judgment was not passed
upon actual fraud, but only upon constructive fraud, the ruling
was harmless.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. James M. Seawell, Judge.

The facts are stated in the opinion.

Roger Johnson, for Appellant.

James A. Stephens, W. T. Baggett, and Curtis Hillyer, for Plaintiff, Respondent.

Gavin McNab, for Pacific Bank, Respondent.

SMITH, C.—The plaintiff is one of the depositors of the defendant bank, of which, since April, 1894, the defendant McDonald has been president, and the other defendants directors. Since some time in June, 1893, the bank has been in liquidation under the Bank Commissioners' Act of March 30, 1878, and its amendments. The suit was brought by the plaintiff on behalf of himself and other depositors, and its object— or at least its main object—was to assert the equitable title of the bank to one hundred and fifty-six bonds of the Los Angeles Railway Company, which had been received by the defendant McDonald in lieu of one hundred and fifty bonds of the Los Angeles Consolidated Electric Railway Company, to whose property interests the former company had succeeded. The bonds of the latter company, prior to August 1, 1895, had belonged to the defendant bank, and the claim of the plaintiff and the bank is that they were acquired by McDonald under such circumstances as to make him, constructively, the trustee of the latter. The findings and judgment were in favor of the plaintiff and the defendant bank; and provision was made in the judgment for the sale of the bonds, and the payment of the proceeds as therein directed— that is to say: To the defendant McDonald $67,715.76, being the amount of his disbursements on account of the bonds, with interest, less receipts on account of dividends; to the plaintiff, the amount of his costs and of his expenditures for counsel fees, etc., and to the defendant bank the balance. The defendant McDonald appeals from the judgment and from an order denying his motion for a new trial.

McDonald deraigns title to the bonds in question through

one S. G. Murphy, to whom, for the consideration of seventy-five thousand dollars, the bonds were assigned by the Pacific Bank. But it is found by the court, in effect, that Murphy's purchase of the bonds was on the account and for the use of McDonald; and the principal question in the case is as to the sufficiency of the evidence to justify this finding of the court. On this point the following facts either appear from the documentary evidence, or are undisputed: In July, 1895, the Pacific Bank was indebted to the National Bank of Commerce of New York in the sum of about ninety-seven thousand dollars; for which the latter bank held as security the bonds in question and other collaterals, with about thirty thousand dollars previously collected by Murphy (who was its agent in this city); and in the latter part of that month a proposition was made by McDonald to Murphy, and accepted by the latter, to pay to the creditor bank in settlement of its claim the sum of ninety thousand dollars,—Murphy agreeing to take the bonds in question for the sum of seventy-five thousand dollars, and McDonald to guarantee him against loss. In pursuance of this agreement, the following writings were executed, namely: *Of date August 1, 1895,* the note of McDonald to Murphy for the sum of seventy-five thousand dollars, for the use of the First National Bank of San Francisco (of which the latter was president), with a check from McDonald to Murphy for the amount of the note, and the Pacific Bank's assignment of the bonds to Murphy, executed by its secretary; *of date August 2, 1895,* an order of Murphy upon the Bank of California, the custodian of the bonds, to deliver them to McDonald; and *of date August 3, 1895,* Murphy's check on the First National Bank in favor of the Bank of Commerce for ninety thousand dollars. The transaction, according to the testimony of Murphy, was closed, and the documents of date August 1st and 2d delivered, on the latter date; and at the same time the collaterals and cash in the hands of Murphy to the credit of the Pacific Bank were returned to it.

So far there is no dispute. But as to the date and terms of the arrangement between Murphy and McDonald which was thus consummated, there is some discrepancy in their statements. The original agreement between them—of some fifteen days' prior date—was, that upon Murphy's taking the bonds, McDonald would guarantee him against loss; but, according

to the testimony of both, this arrangement was modified by McDonald's agreeing to take the bonds. The latter agreement, McDonald says, was made at Murphy's instance after the original agreement had been consummated and the title to the bonds vested in him. But Murphy testified that it was made at McDonald's instance on or before the first day of August; and his testimony on this point is conclusively confirmed, and that of McDonald refuted, by the note and check of the latter—both of which were of date August 1st, and, therefore, prior to the consummation of the transaction on August 2d. It appears, therefore, from the dates of the several transactions that the purchase money was in fact advanced by McDonald. Nor can it be claimed there is anything in the evidence to rebut the presumption thus arising; or, at least, anything of a very convincing character. The conclusion is therefore irresistible that the purchase was made by Murphy on account of McDonald, and this accords with his testimony in the former suit, referred to in his answer; where he says, in effect, that Murphy refused to buy the bonds, but took them on his (McDonald's) account, or that of the bank. We are of the opinion, therefore, that the finding of the court on this point was fully justified by the evidence.

We are also of the same opinion with regard to the finding of the court that the transaction—that is, the purchase by McDonald—was not ratified by the bank. The settlement with the Bank of Commerce and the sale of the bonds to Murphy as part thereof, were ratified by the board of directors, but the fact of McDonald's purchase was not reported to the board; nor, with the possible exception of one director—who was attorney for McDonald—does it appear that the fact was known to any one until afterwards. Indeed, the only directors who appeared as witnesses (with the exception above stated) testified they did not become cognizant of the fact until afterwards. Their subsequent knowledge of the fact is, with respect to the previous ratification, immaterial, and would only be material in connection with their failure to act, as tending to show a subsequent ratification, or as justifying the finding of the court, that a request by the plaintiff to the directors to bring the suit would have been unavailing.

Other points urged by the appellant are: That the plain-

tiff could not maintain the action until after demand upon the directors to bring the suit; that the judgment is inequitable, and unfair to the appellant; and that the court erred in excluding evidence of the value of the bonds at the time of the sale. As to the first proposition—assuming for the purposes of the decision that the failure of the demand was not excused by the facts alleged in the amended complaint and found by the court—we are of opinion that the objection was obviated by the filing of the cross-complaint of the defendant bank in whose favor the judgment is. Possibly that defendant might have objected to the judgment in favor of the plaintiff for his costs, etc., but it has not done so, and in that matter the appellant is not interested. As to the second point, the objection of the appellant is, that in taking the bonds, and the stocks, which he was required to take with them, he incurred obligations by which he might have been damnified. But he does not claim that he has in fact been in any way injured; nor did he attempt to show there were any existing liabilities against which he should be indemnified. As to the evidence excluded, there can be no doubt that it was material to certain issues in the case, "as for instance, whether the sale to McDonald was ratified by the corporation, or whether he should be charged with actual fraud or merely constructive fraud" (*Dundon v. McDonald,* 137 Cal. 4); and it should, therefore, have been admitted; but the only consequence of its exclusion is that it must be assumed in favor of the appellant that the market value of the bonds was as claimed by him, and this we have assumed. But with regard to ratification, this fact was itself insufficient to establish the appellant's contention, and there was, in fact, no other evidence; and with regard to the issue of actual fraud, the decision of the court rests, not upon that theory, but upon the fact that the appellant procured the bonds while acting as trustee and agent of the bank; which, under the provisions of the code and established equitable principles, was a constructive or *quasi* fraud. (Civ. Code, secs. 2229, 2234; *Golson v. Dunlap,* 73 Cal. 159, and authorities cited.)

We advise that the judgment and order appealed from be affirmed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

                  Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.