[Sac. No. 7213. In Bank. Jan. 25, 1962.]

RICHARD E. RADER, Plaintiff and Respondent, v. E. W. THRASHER, Defendant and Appellant.

John R. Stokes and C. Dan Lange for Defendant and Appellant.

Richard E. Rader, in pro. per., and Rader & Truitt for Plaintiff and Respondent.

DOOLING, J.—Plaintiff, an attorney at law, brought this action for declaratory relief to determine the validity of a contingent fee employment agreement made with defendant during the existence of an attorney-client relationship. The trial court found that the "agreement was executed by defendant of his own free will and volition and not as a result of any duress or undue influence by plaintiff, nor did defendant repose trust and confidence in plaintiff when said agreement was made." Judgment was rendered declaring the agreement to be "valid, binding and subsisting." Defendant appeals.

Defendant was president of a lumber corporation. Beginning in 1954 plaintiff acted as its attorney, working on a time basis plus a monthly retainer. In 1955 defendant wished to acquire certain timberlands and he asked plaintiff to prepare an option agreement for such purchase. Charge for these services was made on the hourly basis then prevailing with the corporation.

Defendant exercised the option but there were some clouds on the title and the closing of the escrow was delayed pending settlement of the dispute. Plaintiff, as defendant's attorney, made demand on the sellers that they comply with their covenant to convey clear title. The sellers then sold the property to third parties.

Following the sale plaintiff, on defendant's behalf, brought an action to compel specific performance of the option agreement. An injunction was obtained to prevent logging of the timber on the property. The action finally went to trial in March 1958. A few days before the trial defendant asked plaintiff what the fee would be and plaintiff replied that if the case were won, the fee would be $25,000. Defendant protested and after further discussion of counterproposals, it was orally agreed that plaintiff's fee would be 30 per cent of the net profit.

On August 8, 1958, the trial court filed its memorandum of decision granting specific performance of the option. On August 20 defendant visited plaintiff's office, read the court's memorandum and the final papers prepared by plaintiff for the court's disposition of the case in conformity with its memorandum, and then asked plaintiff to put into writing the agreement concerning plaintiff's fee. Accordingly plaintiff prepared and the parties executed the following document: "In confirmation of our previous conversations regarding the fee arrangement in the above captioned matter, I agree to accept

as my full and total fee for services rendered to you in that proceeding a sum equal to thirty percent (30%) of the net profit, if any, made upon a re-sale of the property (including any services in the Re-sale).

"In the event that you should decide to keep and log the property and then sell the logged-over land, my fee would be equal to thirty percent (30%) of the over-all net profit.

"If the foregoing statement conforms to your understanding of our arrangement please sign and return the enclosed copy of this letter.

Very truly yours,

/s/ Richard E. Rader

RICHARD E. RADER

Approved:

/s/ E. W. Thrasher

 E. W. THRASHER"

In February 1959 defendant attempted to renegotiate with plaintiff the question of a fee on the basis of a flat sum but they could not agree on an amount and no change was effected. Plaintiff continued to act as defendant's attorney in the case until May 1959, when defendant obtained other counsel.

In June 1959 plaintiff brought this action for determination of his rights under the fee agreement. Defendant in his answer admitted execution of the agreement but alleged as a defense that there was a "confidential relationship" between the parties and the "agreement was executed by defendant at a crucial stage in [the] litigation" wherein plaintiff was representing defendant and "was executed by defendant as a direct result of duress and undue influence by plaintiff against and upon defendant."

At the trial defendant testified that when the matter of a fee was first discussed in March 1958, he was outraged at plaintiff's proposal of a charge of $25,000 for a successful prosecution of the case, and that he thereupon "lost faith" in plaintiff to such an extent that at the time the oral agreement was reached and all times thereafter, including August 20, 1958, he had no trust or confidence in plaintiff whatsoever. Defendant further testified that he requested preparation of the written agreement on August 20 so as to have "some protection from what [he] considered an unscrupulous attorney" but he at no time intended to abide by either the oral or the written agreement; and that he concealed his feel-

ings from plaintiff until February 1959, when defendant unsuccessfully attempted to renegotiate the fee agreement so as to get plaintiff "out of the deal." Upon this evidence the trial court rejected defendant's claim that the agreement of August 20, 1958, was executed by defendant as a result of duress and undue influence by plaintiff. Rather it found that defendant entered into the agreement of "his own free will and volition" and that defendant did not "repose trust and confidence in plaintiff when said agreement was made." Accordingly the agreement was adjudicated "valid, binding and subsisting."

This appeal involves the proper application of Civil Code, section 2235, to a contract entered into between an attorney and his client during the time that the attorney-client relationship exists. Section 2235 provides: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

■ It is not disputed that this section generally applies to contracts entered into between attorney and client during the existence of the attorney-client relationship. However, plaintiff takes the position that the section does not here apply because the court expressly found that defendant did not "repose trust and confidence in plaintiff when said agreement was made." Plaintiff insists that only where a "confidential" relationship exists between the client and his attorney can section 2235 of the Civil Code be brought into play.

■ We recently noted, however, in *Vai v. Bank of America,* 56 Cal.2d 329, 337-340 [15 Cal.Rptr. 71, 364 P.2d 247], that the duties of a trustee may be cast upon one who occupies a "fiduciary" relation to another even though no "confidential" relation exists between the parties. In *Vai* we found the fiduciary relationship between husband and wife to exist in respect to the community property of the spouses even though the mutual trust and confidence upon which a confidential relationship must be based had ceased to exist. We found this fiduciary relation in that case because of the husband's right of control and management of the community property.

Plaintiff seizes upon certain language used in *Vai* to argue that only where one has the management and control of the property of another can a fiduciary relationship exist in the

absence of the additional factor of trust and confidence reposed by one in the other. In this we are satisfied that plaintiff takes too narrow a view of the duties cast upon an attorney in his dealings with his client. ▮ The relationship of attorney and client by its very nature is one in which the attorney assumes, and owes to his client, the exercise of the highest good faith. (*Clark* v. *Millsap*, 197 Cal. 765, 783 [242 P. 918]; *Metropolis etc. Sav. Bank* v. *Monnier*, 169 Cal. 592, 598 [147 P. 265]; *Cox* v. *Delmas*, 99 Cal. 104, 123 [33 P. 836]; Rest., Torts, § 874, com. a; Rest. 2d Trusts, § 2, com. b.) ▮ The fact that the client had lost trust and confidence in his attorney could not lessen the attorney's duties to his client which arise from the assumption of the relationship by the attorney; although the lack of trust and confidence is one factor to be weighed by the trial court in determining whether in fact the client was acting under the undue influence of the attorney, since one who lacks confidence in and distrusts his attorney is obviously much less likely to allow himself to be imposed upon by him.

▮ It is clear that by his contract for a contingent fee plaintiff "obtained an advantage" from defendant within the meaning of section 2235 of the Civil Code. ▮ We said in *Bradner* v. *Vasquez*, 43 Cal.2d 147 [272 P.2d 11], at page 152: "When a fiduciary enters into a transaction with a beneficiary whereby the fiduciary's position is improved, or he obtains a favorable opportunity, or where he otherwise gains benefits, or profits, it may fairly be said that an advantage has been obtained. To declare that the advantage obtained must be shown to be unfair, unjust, or inequitable before the presumptions arise would result in the imposition of a condition which is not required by section 2235."

▮ Upon the proof that plaintiff entered into the contract with his client for his fee while the relation of attorney and client existed between them, two presumptions arose under section 2235: that the defendant entered into the contract (1) "under undue influence" and (2) "without sufficient consideration." The burden of going forward with the proof to rebut both presumptions was thereby cast upon plaintiff.

The trial court found that "[s]aid agreement was executed by defendant of his own free will and volition and not as a result of any duress or undue influence by plaintiff. . . ." Although expressly requested to do so by defendant, the court made no finding as to the adequacy of the consideration.

While the code section uses the term "insufficient" consideration and not "adequate" consideration, it was early held that the code section did not change the rule, long settled in the equity courts, that in attempting to enforce a contract against his beneficiary the fiduciary must ordinarily establish that the consideration was an adequate one. (*Golson* v. *Dunlap*, 73 Cal. 157, 161-164 [14 P. 576].) So on page 162 of that case the court said: "In our view, the words 'sufficient consideration' mean not sufficient to support a contract between ordinary parties, but sufficient to support the particular transaction; and the presumption raised by the section can be rebutted only by proof of such a consideration. With reference to what consideration is sufficient to support the particular transaction, resort must be had to the rules of courts of equity." The court, after noting certain exceptional cases in which the requirement of an adequate consideration might be relaxed or even dispensed with (i.e., in the case of a gift by a beneficiary to his fiduciary freely and knowingly made), continued at page 163: "On the other hand, the element of adequacy of consideration is most important. The great object of the rule is to prevent imposition on the part of trustees; and, in one sense, this may be said to be to prevent trustees from acquiring the property of their *cestuis que trust* for an inadequate consideration. To disregard the question of inadequacy, therefore, is to attempt to apply a rule while shutting one's eyes to its object and purpose. The writers above referred to are not very far out of the way in speaking of the adequacy of consideration as essential."

The necessity of showing adequacy of consideration was referred to in several of the cases cited in the notes to Civil Code, section 2235, by Haymond and Burch of the California Code Commission in their Annotated Civil Code (1st ed. 1874). (See, e.g., *Ford* v. *Harrington*, 16 N.Y. 285, 288; *Brock* v. *Barnes*, 40 Barb. (N.Y.) 521, 529, quoting from *Howell* v. *Ransom*, 11 Paige (N.Y.) 538; *Evans* v. *Ellis*, 5 Den. (N.Y.) 640; all of which cases enunciate the requirement of adequate consideration in passing on the validity of contracts between attorney and client.) The same requirement is generally imposed today. (2 Scott on Trusts (2d ed. 1956) § 170.1, pp. 1195-1196; § 217, p. 1601; Bogert, Trusts and Trustees (2d ed. 1960) § 544, pp. 624-625.)

Plaintiff cites certain cases (*Dimond* v. *Sanderson*, 103 Cal. 97 [37 P. 189]; *Donovan* v. *Security-First Nat. Bank*, 67 Cal.

App.2d 845, 853-854 [155 P.2d 856] ; *Ferrara* v. *La Sala,* 186 Cal.App.2d 263, 273 [9 Cal.Rptr. 179] [dictum]) to the effect that the presumption of consideration for a written instrument under Code of Civil Procedure, section 1963, subdivision 39, is not rebutted by the presumption of insufficient consideration created by Civil Code, section 2235, unless the proof shows that an *unfair* advantage was gained. It is now settled however that the proof of an advantage (not an *unfair* advantage) is sufficient to raise the presumption of insufficient consideration under section 2235. (*Bradner* v. *Vasquez,* quoted *supra,* 43 Cal.2d 147, 152.) Once the special presumption created by section 2235 arises, it must control over the general presumption of consideration created by Code of Civil Procedure, section 1963, subdivision 39, under the settled rule that a special provision relating to a particular subject will govern against a general provision, although the latter standing alone might be broad enough to include the subject to which the more particular provision relates. (Code Civ. Proc., § 1859; *People* v. *Moroney,* 24 Cal.2d 638, 644 [150 P.2d 888] ; *Rose* v. *State,* 19 Cal.2d 713, 723-724 [123 P.2d 505] ; *Neuwald* v. *Brock,* 12 Cal.2d 662, 669 [86 P.2d 1047].) Any language in *Dimond* v. *Sanderson, Donovan* v. *Security-First Nat. Bank,* and *Ferrara* v. *La Sala,* cited *supra,* inconsistent with this conclusion is hereby disapproved.

 While the answer did not expressly plead inadequacy of consideration, much of the defendant's evidence was directed to that question, most of it introduced without objection, and we are satisfied that the parties by their conduct must be held to have introduced this issue on the trial. (*Colbert* v. *Colbert,* 28 Cal.2d 276, 281 [169 P.2d 633] ; *Martin* v. *Della,* 211 Cal. 74, 76 [293 P. 25].) Under the circumstances it was error not to make a finding on the issue of the adequacy of the consideration.

. For the guidance of the court on retrial we note: That adequacy of consideration is to be determined as of the time the contract was entered into (*Golson* v. *Dunlap, supra,* 73 Cal. at p. 164; see also *O'Connell* v. *Lampe,* 206 Cal. 282, 285 [274 P. 336] ; *Baran* v. *Goldberg,* 86 Cal.App.2d 506, 509-510 [194 P.2d 765] ; 45 Cal.Jur.2d, Specific Performance, § 24, p. 287) ; and it does not require an exact relation between value and price but only what is just and fair under all of the circumstances (*Golson* v. *Dunlap, supra,* 73 Cal. at p. 164; see

also *Dennis* v. *Overholtzer,* 178 Cal.App.2d 766, 777-778 [3 Cal.Rptr. 193] ; *Cushing* v. *Levi,* 117 Cal.App. 94, 100-101 [3 P.2d 958] ; 45 Cal.Jur.2d, Specific Performance, § 24, pp. 286-287 ; § 25, pp. 289-291). ▇▇▇ Furthermore, in determining the adequacy of the consideration for the contract here involved, the court must remember that " [a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." *(Estate of Raphael,* 103 Cal.App.2d 792, 796 [230 P.2d 436] ; see also *Swanson* v. *Hempstead,* 64 Cal.App. 2d 681, 688-689 [149 P.2d 404].) The gamble in the contract here was twofold : (1) on the successful outcome of the litigation and (2) on the realization of a profit if any and on its amount.

For the failure to make a finding on the adequacy of the consideration the judgment must be reversed.

Judgment reversed.

Gibson, C. J., Traynor, J., Peters, J., and White, J., concurred.

SCHAUER, J., Dissenting.—For the reasons more fully stated in my dissenting opinion in *Bradner* v. *Vasquez* (1954) 43 Cal.2d 147, 154-156 [272 P.2d 11], it is my view that the presumption set forth in section 2235 of the Civil Code should be applied as between attorney and client only where it is *at the least* inferable from the circumstances that the attorney obtained an "advantage" over the client as distinguished from the normal benefits of a fair transaction.

In the case now at bench the trial court found, as related in the majority opinion, that the contingent fee agreement between plaintiff-attorney and defendant-client "was executed by defendant of his own free will and volition and not as a result of any duress or undue influence by plaintiff, nor did defendant repose trust and confidence in plaintiff when said agreement was made." The trial court further declared, in its memorandum of decision, that "The defendant, in the Court's view, is a positive, able, fearless person, with more than usual business experience. He is accustomed to leadership. He has had a number of experiences in retaining counsel. He is, no doubt, analytical in determining the needs of a particular situation. . . .

"The plaintiff and the defendant did, just prior to the trial,

discuss fees. It is not an unusual thing that a lawyer and his client should make some agreement concerning fees. . . . A person with the experience of the defendant would not be expected to have any reticence about a frank discussion as to what might be expected of him financially in case of litigation. . . ."

In addition the court stated in the same memorandum that "the Court has not before it any evidence from which it can find whether the consideration was adequate at the time of the written agreement or at the time of the oral agreement upon which that was based. . . ."

It is thus apparent that the trial court determined that no "advantage" had been secured by the attorney over the client.

Furthermore, it seems pertinent to point out that presumptively the justices of this court are qualified to determine the reasonable value of legal services. In *Kirk* v. *Culley* (1927) 202 Cal. 501, 508-510 [8, 9] [261 P. 994], we said: "It will be noted that under the second count of the complaint . . . a proper cause of action in *quantum meruit* is set forth. It is also apparent that no findings of fact thereunder were made by the trial court as to the reasonable value of the legal services rendered by the plaintiff below to defendant. With a finding upon this subject the cause is in proper condition for this court to make or direct the judgment that shall be entered and the cause thereby finally determined. It is unnecessary to take further evidence, . . . It has many times been held and is a sound principle of law that a trial judge in a court of record, who must himself be an attorney at law, has the power, independent of testimony as to value, to appraise the legal services shown by the record in the cause before him to have been rendered. . . .

"If the trial court may make an appraisal and adjudication of value of such services, it must be presumed that appellate courts possess like power and ability so to do." See also *Denio* v. *City of Huntington Beach* (1943) 22 Cal.2d 580, 591 [3] [140 P.2d 392, 149 A.L.R. 320]; *Genis* v. *Krasne* (1956) 47 Cal.2d 241, 246 [2] [302 P.2d 289]; *Cirimele* v. *Shinazy* (1955) 134 Cal.App.2d 50, 52 [4] [285 P.2d 311, 52 A.L.R.2d 860]. Having the power and the ability to adjudicate the value of legal services (where the record shows the character, and extent of such services) it is my view that we should be able to determine from the record here whether an "advantage" was taken by plaintiff over the defendant.

Having examined the record I am impelled to conclude that I would affirm the judgment declaring the contingent fee agreement to be "valid, binding and subsisting."

McComb, J., concurred.

Respondent's petition for a rehearing was denied February 21, 1962. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.