[L.A. No. 31023. Dec. 29, 1978.]

MIKE MAYO, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Leonard Plotkin for Petitioner.

Herbert M. Rosenthal and Truitt A. Richey, Jr., for Respondent.

OPINION

THE COURT.—We review, and approve, the recommendation of the majority of the Disciplinary Board of the State Bar (board) that petitioner Mike Mayo should be suspended from the practice of law for four months.

Petitioner was admitted to practice in January 1953 and has had no prior disciplinary record. After a lengthy hearing, the board found that petitioner had represented a client in the probate administration of his client's deceased sister's estate without disclosing either to the client or to the probate court that petitioner owed money to the estate, representing funds borrowed by petitioner from the deceased during her lifetime.

Petitioner's sole contention is that the evidence presented to the board was insufficient to support its conclusion that he had borrowed the money.

■ Our function in State Bar disciplinary proceedings is well established. We make independent findings of fact on review of the entire record and exercise an independent judgment as to the discipline to be imposed. (See *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 301 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].) Our review of the record in the present case indicates that there was ample evidence to support the conclusion of the board.

In March of 1966 Mrs. Peggy McDonnell told her accountant, Rudolph Silva, that she was about to loan petitioner, her attorney, $18,000 to be evidenced by an unsecured promissory note providing for monthly payments of $500, and bearing interest at 10 percent. She further advised Silva that petitioner had said that he was going to use the money to purchase stock in a corporation which owned the building in which his law office was located.

On April 12, 1966, two checks totaling $14,695 were deposited in petitioner's general commercial bank account. One check was drawn on Pacific Savings & Loan in the sum of $5,000, payable to Mrs. McDonnell and showing an endorsement by her to the order of Mike Mayo. Beneath her endorsement was a stamped endorsement payable to the Bank of Pico Rivera for deposit only to the account of Mike Mayo. The second check was in the amount of $9,695.72 drawn on Atlantic Savings & Loan, bearing a similar endorsement to the order of Mike Mayo by Mrs. McDonnell below which was a stamped endorsement to petitioner's account. Both checks bore the date of April 11, 1966, and both were deposited on April 12, 1966, in Mayo's general commercial bank account.

Petitioner apparently treated receipt of the foregoing funds as a loan because he did not report them as income, nor did he list them in any other manner, on his 1966 federal or state income tax returns. To assist Mr. Silva in the preparation of her 1966 income tax returns, in early 1967 Mrs. McDonnell gave to him a handwritten list entitled "1966 Income" in which she had recorded monthly payments received by her from May to December 1966, inclusive. Payments, designated "Interest Mike Mayo," totalled $1,166.39 and were reported by her on the 1966 tax returns as interest income received from petitioner in this amount.

Mrs. McDonnell died on May 7, 1967, and petitioner was retained by her half-brother, George Blackmore, to represent him in the handling of her affairs. Petitioner arranged for admission of Mrs. McDonnell's will to probate, for the issuance of letters testamentary to Blackmore, and represented Blackmore in the administration of the estate. A decree of distribution was filed on February 19, 1968, under which all of the estate assets were distributed to Blackmore. Petitioner never mentioned to Blackmore the loan in question.

On February 10, 1971, during the course of a conversation with his accountant Mr. Silva, who had also served Mrs. McDonnell, Blackmore learned that Mrs. McDonnell had mentioned the loan and the interest payments to Silva. When confronted by Blackmore with the issue of the loan, petitioner denied its existence and further denied any knowledge of the two checks. No note was ever discovered. Petitioner refused Blackmore's subsequent demands to repay the loan. A civil action for its collection was filed by Blackmore in February 1973, and two years later in February 1975, one day before trial, petitioner settled the lawsuit by paying Blackmore $14,500.

██ As the foregoing summary indicates, the evidence was more than sufficient to support the conclusion of the board that petitioner had knowingly withheld information from Blackmore regarding the existence of his loan from Mrs. McDonnell.

██ It is well established that "The relationship of attorney and client by its very nature is one in which the attorney assumes, and owes to his client, the exercise of the highest good faith" (*Rader* v. *Thrasher* (1962) 57 Cal.2d 244, 250 [18 Cal.Rptr. 736, 368 P.2d 360]), and "[t]he relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity . . ." (*Cox* v. *Delmas* (1893) 99 Cal. 104, 123 [33 P. 836]). Complete candor and honesty by petitioner both to his client Blackmore and to the probate court was a minimum prerequisite to satisfying this fiduciary duty. Petitioner was obliged to report to Blackmore the existence of any money he possessed which belonged to Blackmore. (ABA Code of Prof. Responsibility, canon 9; Rules Prof. Conduct of State Bar, rule 9.) ██ The breach here was of a trust central to the attorney-client relationship and petitioner attempted to profit financially from a violation of that confidence. The record reflects ample evidence that petitioner committed acts which contravened his duties as an attorney and violated the rules of professional conduct.

We find the board's recommendation appropriate. Accordingly, it is ordered that petitioner be suspended from the practice of law for four months, that he pass the Professional Responsibility Examination within one year of the effective date of this order (see *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929]), and that he comply with California Rules of Court, rule 955, within thirty days after the effective day of this order.