[S. F. No. 19475.   In Bank.   Aug. 13, 1957.]

HAROLD EDWARD COOPER, JR., a Minor, etc., et al., Respondents, v. IDA COOPER, Individually and as Executrix, etc., Appellant.

Raymond B. Haizlip and A. Brooks Berlin for Appellant.

Sullivan & West, Clyde S. West and James B. O'Grady for Respondents.

CARTER J.—Defendant, Ida Cooper, appeals individually and as executrix of the estate of Harold E. Cooper, from a judgment in favor of Vera P. Alves, Harold E. Cooper and Carolyn Joan Cooper, the former wife and minor children of the decedent.

Vera and Harold Cooper were married in 1933. Two children, Harold, Jr. and Carolyn were born to them in 1935 and 1938, respectively. On May 21, 1948, in contemplation of a legal separation, Vera and Harold entered into a property settlement and separation agreement. By its terms Vera retained the family home and automobile and Harold certain tools and shop equipment. It was agreed that Vera was to have custody of the minor children and Harold was to pay to Vera the sum of $100 per month for her support and the sum of $90 per month support for the minor children. Each party retained, under the agreement, the personal property in his or her possession.

At the time this agreement was executed there were four policies of insurance in force on the life of Harold. Three policies, totaling a principal sum of $7,500, were issued by the Northwestern Mutual Insurance Company; one policy, in the principal sum of $7,500 (now worth $12,000), was issued by the Equitable Life Assurance Society. Vera was the named beneficiary in all of these policies.

The agreement provided, with respect to the policies of insurance, as follows:[1]

"Eighth: *The husband shall and does hereby release, transfer, sell, assign and set over to the wife, all right, title and interest in and to three certain life insurance policies* written in the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, in the total principal sum of $7,500, wherein the wife now appears as beneficiary and the husband as insured; *the husband shall execute appropriate instrument as required* by said insurance company and the American Trust Company, *to provide that the wife and said American Trust Company shall act as joint trustees to administer the proceeds of said life insurance policies for the support and maintenance of the wife and said minor children, in the event of husband's death.*

"The husband shall pay all premiums on said policies as they become due and shall maintain said policies in full force and effect. Husband shall also pay when due all bills for interest on indebtedness now outstanding against said policies, and shall not take any further action which will increase indebtedness against said policies or diminish the cash surrender value thereof. *When the youngest of the said two minor children shall have reached majority, the wife's rights in and to said life insurance policies shall cease, and the husband shall have the right to designate a new beneficiary or cancel or otherwise dispose of said policies as he may desire.*

"Ninth: The husband agrees to pay all premiums and to keep in full force and effect until the younger of the two minor children shall have reached majority, group life insurance in the present approximate principal amount of $7,500 written in the Equitable Life Assurance Society,[2] which the husband now carries as an employee of the American Trust Company and in which the wife is named as beneficiary. It is understood and agreed that such group insurance is mandatory so long as husband is employed by said American Trust Company, and that the principal amount and premiums vary from time to time depending on loss experience of the insurance company.

"*The husband shall execute appropriate instrument to provide that the wife and said American Trust Company shall act as joint trustees, to administer the proceeds of said*

---

[1] The italicized portions are those under attack in the present proceeding.

[2] This policy provided that it was nontransferable.

*life insurance policy for the support and maintenance of the wife and said minor children, in the event of husband's death. When the younger of the said two minor children shall have reached majority, the wife's rights in and to said policy shall cease, and the husband shall have the right to designate a new beneficiary or cancel or otherwise dispose of said policy as he may desire.*"

In February, 1949, Vera obtained an interlocutory decree of divorce which became final on March 6, 1950. Harold was ordered to pay to Vera, for her support, the sum of $100 per month until her remarriage, and $100 per month for the support of the two minor children. The interlocutory decree recited that it appeared to the court that "the parties had heretofore entered into an agreement of separation dated May 21, 1948, *which said agreement has been fully consummated. . . .*" (Emphasis added.) The final decree of divorce made no reference to the separation and property settlement agreement. Subsequent to the divorce Harold paid $100 per month for the support of the children rather than the $90 provided for in the agreement.

After the divorce had become final, Vera married one Alves, and Harold married the defendant, Ida. After his remarriage Harold surrendered the three Northwestern Mutual policies for their cash value and changed the beneficiary of the Equitable policy from Vera to Ida.

Subsequent to the execution of the agreement but prior to the divorce action the parties negotiated through their common attorney with respect to a trust instrument. One draft was finally signed by Vera but it was never signed by Harold or the American Trust Company.

Harold died on September 17, 1954. He left a will in which Ida was named residuary legatee and executrix. One provision thereof declared "I intentionally omit to make provision for my children, Harold E. Cooper, Jr., and Carolyn Joan Cooper, as they are otherwise adequately provided for."

Shortly after Harold's death, Ida filed a claim with Equitable for the proceeds of the policy on Harold's life. Thereafter Vera and the two minor children brought suit against Ida, individually, and as executrix, Northwestern Mutual and Equitable.[3] The plaintiffs sought to recover the proceeds of

---

[3] Equitable deposited in court the sum of $12,000, and the suit against it was dismissed. The suit against Northwestern was dismissed by stipulation.

the policies mentioned in the agreement; or if they had been paid to Ida to recover the proceeds from her; or if any of the policies had been surrendered by Harold to recover the proceeds from Ida as executrix.

The trial court found that the agreement which had been entered into between Vera and Harold had not been merged in the decree of divorce or abandoned. It concluded that plaintiffs were the equitable owners of the proceeds of all four policies; that the sum of $12,000 paid into court be paid to plaintiffs and that plaintiffs recover from the estate of Harold the value of the three Northwestern policies surrendered by Harold, together with interest on both amounts from the date of Harold's death.

The primary question here presented for determination is whether the evidence supports the conclusion of the trial court that the agreement survived the decree of divorce procured by Vera.

In both paragraphs of the agreement relating to the insurance policies Harold was to execute "appropriate instrument[s]" to provide that the wife and American Trust Company were to act as joint trustees to administer the proceeds of the policies to provide for the support and maintenance of both the wife and minor children in the event of Harold's death. No such instrument was ever executed although Vera did sign one proposed draft and testified that she "took it for granted" that the trust instrument had been signed by Harold and the American Trust Company.

The interlocutory decree of divorce which was prepared by Vera's attorney contained this statement: "And it appearing to the Court that the parties had heretofore entered into an agreement of separation dated May 21, 1948, *which said agreement has been fully consummated.*" (Emphasis added.) At no time, of course, was the agreement fully consummated since the contemplated trust agreement concerning the four insurance policies had never been executed. The above-quoted statement constitutes the only reference in either decree to the agreement. The decree differs from the agreement in two respects: First, it awards to Vera the sum of $100 per month, "until further order of the Court, *or until the remarriage of plaintiff* [Vera]." (Emphasis added.) The agreement provided for the payment to her, by Harold, of the sum of $100 per month without any such provision for termination. Secondly, the agreement provided that Harold would pay $90 per month for the support of the two minor children until

they reached majority "unless sooner married or deceased";
the decree provided that Harold would pay $100 per month
for the support and maintenance of the minor children "until
further order of the Court." The record shows that up until
the effective date of the decree, Harold paid $90 per month
for the support of the minor children; that thereafter he
paid $100 per month for their support. The record is com-
pletely silent as to whether he paid Vera anything for her
own support after her remarriage.

The divorce obtained by Vera became final on March 6,
1950. Sometime thereafter (the date does not appear) Harold
was remarried to defendant. On October 3, 1951 (after his
remarriage), Harold surrendered the three Northwestern
policies for their cash value of $7,500. On or about Novem-
ber 17, 1950, he changed the beneficiary of the Equitable
policy from Vera to defendant, Ida, his then wife.

After Vera signed the draft of the proposed trust instru-
ment (this was, apparently sometime in 1948), from all that
appears she made no effort to ascertain whether or not the
instrument was ever executed by Harold and the American
Trust Company.

Harold's will, executed on July 19, 1954, contained the
following statement: "SIXTH: I intentionally omit to make
provisions for my children, HAROLD E. COOPER, JR., and
CAROLYN JOAN COOPER, as they are otherwise adequately pro-
vided for." So far as appears, other than the agreement and
the decree, no provision was made for the children.

■ We are of the opinion that there is no evidence sup-
porting the trial court's determination that the agreement had
not been abandoned or superseded by the decree of divorce
obtained by Vera. On the contrary, the record shows that
Vera procured a divorce and made no attempt to discover
whether a trust instrument had been executed by Harold;
that Harold made the payments for child support ordered by
the decree rather than those agreed upon in the agreement;
that Vera accepted those payments; that after the divorce
was granted Harold remarried and immediately surrendered
the Northwestern policies and changed the beneficiary of the
Equitable policy which was a clear indication that he con-
sidered the agreement no longer binding upon him; and that
in the interlocutory decree prepared by Vera's attorney it
was declared that the agreement had been "fully consum-
mated."

Vera's argument that she and the children had a vested

interest in the policies of insurance because of the terms of the separation agreement must fail. The cases cited in support of her argument are not in point. In *Waxman* v. *Citizens Nat. Trust & Sav. Bank,* 123 Cal.App.2d 145, 149 [266 P.2d 48], by the terms of a property settlement agreement, the daughter was named as irrevocable beneficiary of a policy of insurance. The property settlement agreement was approved in the interlocutory decree of divorce. The parties sought by written agreement, to modify the property settlement agreement as it affected the daughter. The court held that the daughter had a vested equitable interest in the life insurance policy which could not be defeated without her consent. In the case at bar, the paragraphs of the agreement relating to the insurance policies provided that trust instruments were to be executed with Vera and the Bank as cotrustees. There is no indication in the record that such instruments were ever executed by Harold and we cannot speculate as to what the terms of such instruments would be. In the Waxman case the property settlement agreement was complete in itself and was, furthermore, approved by the court in the divorce action. In *Shoudy* v. *Shoudy,* 55 Cal. App. 344, 350 [203 P. 433], the parties had entered into an agreement regarding certain policies of insurance which were to be kept in full force and effect with plaintiff, decedent's first wife, as beneficiary. The court held that plaintiff had acquired fixed and vested "rights or equities" because of the complete agreement entered into between the parties. In *Mutual Life Ins. Co.* v. *Franck,* 9 Cal.App.2d 528, 531, 534 [50 P.2d 480], by the terms of a property settlement agreement, the wife was made the sole, irrevocable beneficiary of certain policies of insurance. The court held that an insured could waive his right to change the beneficiary of a life insurance policy and by contract convert a contingent interest in the policy into a "vested equitable interest which may not be subsequently defeated by an effort to change the beneficiary without his consent." The agreement under consideration here so far as the insurance policies were concerned was not self-executing inasmuch as it was specifically provided that the policies were to become the subject matter of a trust to be set up at some subsequent time. As we have heretofore noted, Vera made no attempt to ascertain whether the "appropriate instrument[s]" had ever been executed and her conduct in procuring a decree of divorce in which it was stated that the agreement had been fully consummated

leads to the conclusion that the portions of the agreement which had not been carried out had been abandoned by the parties.

■ There is no merit to defendant's arguments that plaintiffs must fail because of the statute of limitations or because of laches. The statute of limitations (Code Civ. Proc., § 337, subd. 1) is not set in motion until the date of the decedent's death in a case such as this (*Waxman* v. *Citizens Nat. Trust & Sav. Bank,* 123 Cal.App.2d 145, 149 [266 P.2d 48]). Plaintiffs had no cause of action until Harold's death and were, therefore, not guilty of neglect in failing to ascertain whether or not the policies of insurance were in full force and effect prior to the time their cause of action accrued.

■ We have concluded that Vera had no interest in the policies at the date of Harold's death, because Harold's obligation for her support, under the terms of the divorce decree, terminated upon her remarriage; and that the interest of the children in the estate of their father is limited to the amount necessary for their support measured by the provisions of the divorce decree prior to reaching their majority.

The judgment is reversed with directions to the trial court to enter judgment in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb J., concurred.

Respondents' petition for a rehearing was denied September 11, 1957.