[Civ. No. 20159. First Dist., Div. Two. Dec. 15, 1961.]

GRANT W. ORNBAUN et al., Plaintiffs and Respondents, v. F. J. MAIN, Individually and as Administrator, etc., Defendant and Appellant. (Consolidated Cases.)

Gardiner, Riede & Elliott for Defendant and Appellant.

Rawles, Nelson & Golden for Plaintiffs and Respondents.

KAUFMAN, P. J.—This is a consolidated appeal of two causes of action brought by Grant W. Ornbaun, Elsie A.

Ornbaun, and their son, Grant Irvin Ornbaun, the respondents herein, against F. J. Main, appellant herein, individually and as the administrator of the estate of the deceased grantor, William Nunn. Action No. 22013 was for the specific performance of the decedent's contract and to quiet title to real property; action No. 22014, for the value of certain services rendered to the decedent by plaintiffs.

In the quiet title action, the trial court found: that William Nunn died intestate on September 28, 1957, leaving his half brother, F. J. Main, the appellant herein, and his half sister, A. Bargalotti,* as his only surviving heirs; that the appellant, F. J. Main, was duly appointed as the administrator of the estate; that for many years, the decedent and the Ornbauns had been very close personal friends as well as partners in various joint business ventures in the operation of farms and ranches; that as a result, a close bond of friendship and mutual trust had existed for many years between the parties.

The court further found that in July, 1953, the parties entered into the following oral agreement: Grant W. and Elsie A. Ornbaun agreed to build a furnished cabin near their home, for the use and occupancy of Nunn. Nunn was to occupy and use this cabin for life, and in return agreed to convey to respondent, Grant Irvin Ornbaun, hereafter referred to as "Sonny," a parcel of real property in Boonville which Nunn had acquired from Nettie Harrington in 1945.

Pursuant to the oral agreement, the Ornbauns constructed the cabin on their property, furnishing all of the labor and materials. The cabin was completed in August, 1953. William Nunn moved in and occupied the cabin rent free until his death in September 1957. On June 7, 1954, William Nunn and Elsie A. Ornbaun went to see attorney Newell Rawles in order to formalize the above-mentioned oral agreement. A contract and deed were prepared on June 7, 1954. The deed was signed by the grantor but was never physically or manually delivered by him to any person. The agreement was signed by both the decedent and Elsie, then taken to Grant W., who also signed. Each of the parties received a signed copy of the agreement and believed that the contract had been consummated, and that the title to the real property had vested in Grant Irvin Ornbaun, subject only to a life estate reserved to the grantor.

---

*Appellant's attorney testified that although named as a party defendant in the pleadings in both actions, A. Bargalotti has refused to participate in the defense of these actions.

The court further found that while William Nunn retained the physical possession of the deed through inadvertence, he actually intended to convey the title to ''Sonny'' pursuant to his agreement with the Ornbauns; that from the date of completion of the cabin, William Nunn occupied it as his personal residence and devoted it to his own personal uses to the date of his death, and received and enjoyed the full benefit of the performance of each and all of the terms of the agreement from the Ornbauns; that the contract between the parties was supported by a just and adequate consideration and was fair, just and equitable to all concerned, and was never repudiated by the grantor who continued to accept the benefits until his death; that by virtue of their friendship over the years, the parties enjoyed a complete confidential relationship with each other; that the plaintiffs relied upon decedent, William Nunn, to perform said contract as he had agreed to do and the decedent believed that he had performed his contract in accordance with its terms; and that the parties did not know that the real property had not been conveyed of record until after the death of William Nunn.

The court, therefore, concluded that upon the death of William Nunn, the life estate in the Harrington property terminated and title to the real property vested absolutely in Grant Irvin Ornbaun; that the action was not barred by the statute of limitations (Code Civ. Proc., §§ 318, 319, 337, 343), and accordingly entered its decree quieting title. On the appeal from the judgment quieting title, appellant argues that the matter was improperly tried and erroneously decided as the respondents have not established the adequacy of consideration, that a constructive trust cannot arise from the mere failure to perform a contract, and that the action was barred by the statute of limitations. There is no merit in any of these arguments.

Appellant's first argument is in actuality that the findings are not supported by the evidence. The evidence amply supports each and every finding of the court below. The uncontroverted evidence established that the long standing close relationship between the parties dated back to 1921 or earlier, when the decedent lived in a hotel owned by the parents of Grant W. Ornbaun; that after the marriage of Grant and Elsie in 1927, the decedent lived with them and made his home with them on many subsequent occasions; that throughout his life, the decedent had very little contact with his half brother; and had never visited him. Respondent, Grant W.

Ornbaun, met the appellant for the first time after Nunn's funeral.

Numerous witnesses testified that "Sonny" was a particular favorite of the deceased and that from the day when he bought the property, Nunn often said that the Harrington property would belong to "Sonny" and that he had deeded it to him. Appellant testified that sometime in 1953 or 1954, the decedent had said to him: "I don't believe in a will. I am going to deed you this [Harrington] property," but never mentioned the subject again.

Appellant directs his chief contentions against the court's finding of adequate consideration and conclusion that he held the property in trust for respondent, Grant I. Ornbaun. The uncontroverted evidence established that the cabin was about 14 by 16 feet, complete with cupboards, plumbing, electricity, etc. The uncontroverted evidence also established that in 1953, "Sonny" had sold his trailer for $300 and invested the money in materials for the cabin. The total cost of the materials for the cabin was about $600. The Ornbauns furnished all of the labor, which was valued at $1,500-$2,000; the rental value of the cabin was estimated at $40-$45 per month. Respondents' witness testified that in 1953-1954, the Harrington property was appraised at $5,000-$6,000 (fair market value); appellant's witness testified that the fair market value of the property in November 1957, was $9,000. The uncontroverted evidence established that after Nunn's illness in 1955, the Ornbauns prepared his meals, administered his medicines, took care of his clothes and laundry, and otherwise took care of him. After the death of Nunn, the Ornbauns paid the taxes on the Harrington property, although the appellant collected the rents.

Appellant's argument ignores the rule that in an action for specific performance, the fairness and adequacy of the consideration are questions of fact for the trial court (*Wilson* v. *White,* 161 Cal. 453 [119 P. 895]). Thus, the friendship of the parties may be considered (*O'Donnell* v. *Lutter,* 68 Cal.App.2d 376 [156 P.2d 958]). The rule is well stated in *Westwood Temple* v. *Emanuel Center,* 98 Cal. App.2d 755 [221 P.2d 146] at page 759: "The necessity for an adequate consideration in a specific performance action does not mean that the value of the things to be given in exchange for the property to be conveyed must measure up to the appraisement placed upon them by the defendant. The doctrine merely requires that such consideration be just and

fair under all the circumstances and that its sufficiency be addressed solely to the sound discretion and determination of the trial court and be supported by substantial evidence. (*Cushing* v. *Levi,* 117 Cal.App. 94, 102 [3 P.2d 958].) Its adequacy must be determined as of the date of the contract. (*O'Connell* v. *Lampe,* 206 Cal. 282, 285 [274 P. 336] ; *Baran* v. *Goldberg,* 86 Cal.App.2d 506, 510 [194 P.2d 765].)'' There is no question that in the instant case, the trial court's finding was proper and amply supported by the evidence.

 Appellant next argues that the court erred in its conclusions of law, because a trust cannot arise on a failure to perform a contract. This is not, and should not, be the law (*Merkle* v. *Merkle,* 85 Cal.App. 87 [258 P. 969]). In determining somewhat similar issues in that case, the court said at 104: ''The deed in question constituted the mere conduit through or by means of which the deceased attempted, *inter vivos,* to perform her part of the agreement, and even if it were necessary to hold that the said deed was for any sufficient reason fatally defective—if, for instance, in fact or in law there had been no delivery—still the agreement, as alleged, proved and found, being supported by an adequate consideration (Civ. Code, § 3391), would be enforceable in equity and the plaintiff thus vested with title to said real property, notwithstanding that it rests in parol. (Pomeroy on Specific Performance, p. 268; *McCabe* v. *Healy,* 138 Cal. 81 [70 P. 1008] ; *Stewart* v. *Smith,* 6 Cal.App. 152 [91 P. 667] ; *Barry* v. *Beamer,* 8 Cal.App. 200 [96 P. 373].)'' It is hornbook law that a constructive trust arises by operation of law from the relation of the parties, and is usually imposed to prevent unjust enrichment and accomplish an equitable purpose (Civ. Code §§ 1573, 2217, 2224; *Broder* v. *Conklin,* 121 Cal. 282 [53 P. 699] ; *Sampson* v. *Bruder,* 47 Cal.App.2d 431 [118 P.2d 28]). It is a remedial device primarily created to prevent unjust enrichment (*Fleishman* v. *Blechman,* 148 Cal. App.2d 88 [306 P.2d 548]).

 The evidence here established that in August 1955, after Nunn was hospitalized for a broken leg, the decedent asked Mrs. Ornbaun to get and keep the suitcase he had in his cabin because he was worried about the money in the suitcase. Mrs. Ornbaun took the suitcase to her home and opened it, together with her husband. Besides numerous papers and personal effects, they found an envelope containing about $3,200. They did not see a deed or concern themselves with

the remaining contents of the suitcase. Later, the appellant, whom the Ornbauns had never met, and his attorney, appeared at the Ornbaun residence with a power of attorney signed by the decedent and demanded the suitcase. The appellant testified that Nunn had signed the power of attorney in the hospital. Mrs. Ornbaun turned the suitcase over to them. The appellant and his attorney later opened the suitcase but did not inventory its contents; they found the deed and counted $2,450 in cash and a cashier's check for $300.

The appellant testified that when he told the decedent there was only $2,750 in the suitcase, the decedent said: "They got into it." The appellant never mentioned the alleged discrepancy to the Ornbauns, and further testified that despite his offer to help pay for a rest home, Nunn preferred to return to his cabin at the Ornbauns after his release from the hospital.

A few months later, the appellant returned the suitcase and its contents to the decedent but retained the deed and the money. The money was placed in a bank account for Nunn while the deed apparently remained in the files of the appellant's attorney until after the death of Nunn. Appellant's attorney testified that Mr. Nunn could have had the deed delivered if he had shown a desire to do so, but admitted that he had never informed Mr. Nunn of the whereabouts of the deed. In the light of this evidence and the uncontroverted evidence that all of the parties believed title had passed in accordance with the agreement and did not discover the truth until after the death of Nunn, we need not consider in detail appellant's multifarious arguments concerning impropriety of a constructive trust. The remedy of constructive trust is particularly apt where one obtains property with knowledge of another's rights (cf. *Allen* v. *Meyers,* 5 Cal.2d 311 [54 P.2d 450]). The theory upon which it is based was adopted by equity to compel the restoration to another of property to which the holder thereof is not justly entitled (*Clark* v. *Pullins,* 171 Cal.App.2d 703 [341 P.2d 73]). Under section 2224 of the Civil Code, the courts have even gone so far as to hold that the theory behind the creation of this kind of trust extends to practically any case where there is a wrongful acquisition of property to which another is entitled (*Estrada* v. *Garcia,* 132 Cal.App.2d 545 [282 P.2d 547]).

Appellant's arguments concerning the statute of limitations are equally specious. The uncontroverted evidence

established that all of the parties thought the contract had been consummated and title transferred. It was not until after the death of Nunn in September 1957, that the parties discovered that the deed had not been properly delivered. The action was commenced in July 1958. ▇▇▇ Mere lapse of time does not constitute laches unless accompanied by circumstances showing prejudice to the opposing party. ▇▇▇ Where the delay in commencing action is induced by the conduct of the defendant, laches is no defense (*Salmons* v. *Jameson*, 144 Cal.App.2d 698 [301 P.2d 431] ; *Cooper* v. *Cooper*, 49 Cal.2d 30 [314 P.2d 1] ; *Waxman* v. *Citizens Nat. Trust & Sav. Bank*, 123 Cal.App.2d 145 [266 P.2d 48]). ▇▇▇ A cause of action based upon fraud, actual or constructive, does not accrue until the aggrieved party discovers the fraud (*Neet* v. *Holmes*, 25 Cal.2d 447, 467 [154 P.2d 854]).

▇▇▇ In the action for services rendered, No. 22014, the trial court, in addition to the relevant facts mentioned above, found that during the lifetime of the decedent, the Ornbauns furnished nursing care and various and sundry services, including laundering clothes, cleaning the cabin, traveling expenses, and spent sums on behalf of the decedent, for the use and benefit of said decedent; that plaintiffs failed to file a claim for the sum alleged to be due against decedent's estate; that no arrangement existed between the parties for compensation for said services, and no evidence of the value thereof was offered in court on the trial of this matter; that during his lifetime, the decedent delivered to the plaintiffs $931.21, all of which was repaid to him before his death; that the Ornbauns had no moneys of decedent in their possession as of the date of his death on September 28, 1957. Accordingly, the trial court entered judgment against the Ornbauns and denied relief on appellant's cross-complaint for money of decedent delivered to the respondents. The sole issue on this appeal is the propriety of the trial court's denial of relief on the cross-complaint. Appellant argues that in the absence of a precise accounting, this portion of the judgment must be reversed. We cannot agree. The record supports the findings and conclusions of the trial court on this matter.

Judgment in each action is affirmed.

Shoemaker, J., and Agee, J., concurred.