[Civ. No. 8428.   Fourth Dist., Div. One.   May 19, 1967.]

ERVIS L. THOMPSON et al., Plaintiffs and Appellants, v. JAMES F. PRICE et al., Defendants, Cross-complainants and Appellants; JOHN B. HILL et al., Cross-complainants, Cross-defendants, and Respondents; LOUISE CORD, Defendant and Respondent.

184

C. Ray Robinson, Duane W. Dresser, Higgs, Jennings, Fletcher & Mack, Paul D. Engstrand, Jr., Edward M. Wright and Donald W. Raymond for Plaintiffs and Appellants.

Schall, Nielsen & Boudreau and Leland C. Nielsen for Defendants, Cross-complainants and Appellants.

Gray, Cary, Ames & Frye, J. Clifford Wallace and C. M. Monroe for Cross-complainants, Cross-defendants and Respondents.

No appearance for Defendant and Respondent.

BROWN (Gerald), P. J.—

## FACTS

Before retiring from the Coca Cola Company in 1954, Thomas Carl Thompson (Thompson) discussed with James F. Price (Price), an attorney-at-law and supposed friend, the advisability of post-retirement financial investment. Thompson had invested in and become a director of Acme Sash Balance Company, a firm then owned substantially by Mrs. James (Alice) Price. While the Thompson and Price families were close, Alice Price and Thompson were closer, their conduct occasionally embarrassing others.

Relying on Price's advice, Thompson joined the Prices in forming J-A-C Enterprises in 1955. J-A-C issued 200 shares of common stock: (1) 100 shares to Thompson for $10,000 cash; (2) 100 shares to the Prices for $10,000 cash. Thompson and Acme Sash Balance Company each agreed to loan J-A-C $65,000. James Price, Alice Price and Thompson became directors of J-A-C.

From the beginning Price schemed to secure personal advantage at Thompson's and J-A-C's expense. He undertook to keep J-A-C's books and records, manage its affairs, act as its attorney, and advise Thompson regarding J-A-C and his investment in it. Thompson relied on his management and advice. Within six months after J-A-C's creation, Price drew more than $10,000 from it. He represented the drawings on J-A-C's books as salaries and fees. These drawings included $8,400 paid to Mrs. Price, although she never performed services of value at any time for J-A-C. Between 1955 and 1964, the Prices and his secretary, Louise Cord, drew $92,281.88, claimed as salaries and fees. Like Mrs. Price, Louise Cord never performed any services of value for J-A-C. Thompson never received any money or other property from J-A-C. Financially, in other words, the Prices and Thompson created an investment organization; Thompson invested $10,000; Price, although purportedly contributing $10,000, improperly drew for his own benefit far in excess of that figure, leaving the entire financial risk of investment in Thompson.

J-A-C's only substantial investment was in Sorrento Valley property in San Diego County. Price's management of this investment was fraught with fraud.

In 1955, the Dietrich family decided to sell 1,100 acres of Sorrento Valley land. They requested a broker to find a purchaser for $250,000, subject to a 10 percent commission.

186

The broker showed the land to Helen Alvarez Hill, who told him she would buy it. The broker had difficulty obtaining signatures from all the Dietrichs. Concerned, Mrs. Hill consulted an attorney, James F. Price. She disclosed the details of the purchase and the merits of investment in Sorrento Valley land. Impressed, Price secretly contacted the Dietrichs, fraudulently represented himself as authorized by Mr. and Mrs. Hill and Thompson to negotiate purchase, and obtained an option to purchase for $250,000 without a broker's fee. Price took the option solely in his own name, as ''attorney for purchaser.'' In other words, impressed by the opportunity and in violation of the fiduciary duty owing to his client, Mrs. Hill, Price obtained an option for himself. Price tried but failed to peddle the option. The option lapsed.

Undaunted, Price returned to the Dietrichs. This time he contracted to purchase the 1,100 acres for $270,000; he paid two $5,000 J-A-C checks as installments under this contract. He also promised to find a purchaser for an additional 42 acres of the Dietrichs' land; he received the Dietrichs' promise to pay him $5,000 upon completion of this transaction.

Price decided to stop using J-A-C funds in purchasing the 1,100 acres for himself. He schemed to keep an interest in the property, while inducing the Hills and Thompson to take over the purchase. He had to cover up his earlier option to purchase for $250,000. He decided to take advantage of it by falsely explaining he had negotiated it on behalf of two clients, Dr. and Mrs. O. C. Helming. Because of the option, he advised, if the Hills and Thompson purchased and later resold, 12 percent of any profit would belong to the Helmings and 12 percent would belong to himself. He misrepresented his 12 percent as a debt owing from the Helmings for legal services rendered.

Price deceitfully incorporated the 12 percent provisions into purchase agreements. In substance, under the agreements, Price made Thompson personally and totally liable for the entire purchase price even though Thompson was receiving only a ⅓ interest, which interest Price then induced Thompson to assign to J-A-C. In time, J-A-C paid ⅓ of the purchase price. Later, Price induced the Hills and Thompson to purchase the Helmings' non-existent 12 percent interest in future profits.

Price also induced the Hills and Thompson to purchase the 42 acres. He arranged conveyancing, secretly having Thompson's interest conveyed to J-A-C.

In March 1961, Price induced Thompson to transfer 5 shares of J-A-C stock to Thompson, James Price and Alice Price as joint tenants. At the time, Thompson was 71; James Price 54; Alice Price 52. By October 1961, Thompson's health was deteriorating badly. He consulted C. Ray Robinson, an attorney. As a result, the 5 shares of stock were reinstated in Thompson's name. Relying now on disinterested advice, Thompson became disenchanted with Price. Thompson died in January 1963.

While a director, officer and attorney for J-A-C, and aside from J-A-C's investment, Price individually invested in real estate, profiting in excess of $120,000.

### STATEMENT OF THE CASE

Plaintiff C. Ray Robinson is the executor of Thompson's last will. Plaintiff Ervis L. Thompson is decedent's widow.

By their complaint, plaintiffs sought, in substance: (1) to quiet title to an undivided interest in the 42 acres in themselves; (2) to quiet title to an undivided interest in the 1,100 acres in themselves or J-A-C; (3) to declare defendants Price hold their J-A-C stock in constructive trust for plaintiffs; (4) to recover for J-A-C exorbitant salaries and fees drawn from J-A-C by the Prices and defendant Louise Cord; (5) to require the Prices to account for profits made in transactions entered into in violation of their fiduciary duties owing to J-A-C. Defendants James Price, Alice Price, J-A-C and Louise Cord answered. James Price and J-A-C cross-complained against John Hill and Helen Alvarez Hill, seeking a declaration of interests in the land. The Hills answered and cross-complained against James Price and J-A-C to quiet title to an undivided interest in the land.

Plaintiffs and defendants Price and J-A-C appeal from a superior court judgment which: (1) quieted title to the 42 acres in plaintiffs and the Hills; (2) quieted title to the 1,100 acres in the Hills, J-A-C and Thompson's estate; (3) awarded J-A-C $7,500 for exorbitant salaries and fees drawn from it; (4) failed to impose a constructive trust on the J-A-C stock held by the Prices; and (5) failed to require Price to account to J-A-C for the $120,000 profits obtained in other investments.

### PLAINTIFFS' APPEAL

This appeal raises three issues:

1) *Did the trial court err in requiring plaintiffs to prove salaries and fees taken from J-A-C were unreasonable and excessive?* Yes.

■ Of the $92,281.88 drawn from J-A-C by the Prices and Cord the trial court determined $7,500 was excessive and unreasonable. Conclusion of Law 14 recites: "There has been no satisfactory evidence to establish that the other fees and salaries paid by J-A-C to Price, Alice B. Price and Louise Cord are not fair and reasonable, and the corporation having approved thereof, no additional part thereof need be returned to the corporation." The trial court thus required plaintiffs to prove unfairness and unreasonableness. This was improper. Fraudulently working in his own interest, while Thompson's confidant, director and officer of J-A-C, and attorney for J-A-C, Price owed a fiduciary duty requiring him to prove the drawings he manipulated were fair and reasonable (Corp. Code, § 820; Civ. Code, § 2235; *Kohn* v. *Kohn*, 95 Cal.App.2d 708, 718 [214 P.2d 71]; *Associated Vendors, Inc.* v. *Oakland Meat Co.*, 210 Cal.App.2d 825 [26 Cal.Rptr. 806]; *Kennerson* v. *Burbank Amusement Co.*, 120 Cal.App.2d 157, 170-172 [260 P.2d 823]; *Remillard Brick Co.* v. *Remillard-Dandini*, 109 Cal.App.2d 405, 419-421 [241 P.2d 66]; *Herbert* v. *Lankershim*, 9 Cal.2d 409, 426-427 [71 P.2d 220]; *Tretheway* v. *Tretheway*, 16 Cal.2d 133, 140 [104 P.2d 1033]; *Gold* v. *Greenwald*, 247 Cal.App.2d 296 [55 Cal.Rptr. 660]; *Ferrara* v. *La Sala*, 186 Cal.App.2d 263 [9 Cal.Rptr. 179]; *Rader* v. *Thrasher*, 57 Cal.2d 244 [18 Cal.Rptr. 736, 368 P.2d 360]).

None of the briefs attempts to explain the trial court's $7,500 award. ■ The trial court found neither Alice Price nor Louise Cord performed services of value for J-A-C. J-A-C paid Alice Price $16,800; Louise Cord, $11,180.88. J-A-C should recover these amounts.

■ The trial court found Price did not prepare any agreements, did not handle any litigation and did not represent J-A-C in any business transactions except for the Sorrento property transaction, a few minor stock market transactions and liquidation of property loaned to J-A-C by Thompson and Acme at J-A-C's creation. Price fraudulently kept J-A-C's books and records, altering them to secure personal advantage and to dupe Thompson. J-A-C should not compensate Price for fraudulent mismanagement. Price secured the Sorrento property for J-A-C. Price, however, negotiated this transaction with his own financial interest in mind, intentionally neglecting J-A-C's interest and Thompson's interest as the sole financial riskholder. J-A-C should not compensate Price for this self-indulgent effort. Price liqui-

dated property loaned by Thompson and Acme as a part of his scheme to finance J-A-C fraudulently in his own interest. J-A-C should not pay Price for this fraudulent effort. There is no evidence the few minor stock market transactions should be treated differently. In summary, J-A-C should not pay Price for services, whether valuable or not, performed fraudulently in his own interest and in violation of his fiduciary duties (*In re Thompson,* 101 Cal. 349, 355 [35 P. 991, 36 P. 98, 508]; *Clark* v. *Millsap,* 197 Cal. 765, 785 [242 P. 918]; *Priester* v. *Citizens Nat. etc. Bank,* 131 Cal.App.2d 314, 323 [280 P.2d 835]). J-A-C should recover $92,281.88; plaintiffs' attorneys conceded in oral argument this amount should be reduced by $10,000, representing Price's original capital contribution.

2) *Should the trial court have imposed a constructive trust on the J-A-C stock held by the Prices?* Yes.

█ Plaintiffs argue, in substance: Price, in salaries and fees, drew more than he contributed to J-A-C, imposing on Thompson the total financial risk in J-A-C; Price made Thompson liable for the entire Sorrento land purchase price; J-A-C's investment in the Sorrento land, therefore, was Thompson's investment; the Prices will be unjustly enriched if allowed to retain an interest in J-A-C. We agree. Having taken no financial risk, the Prices should not share in the fruits of investment. A constructive trust is an appropriate remedy (*Mattern* v. *Canavan,* 3 Cal.App. 493 [86 P. 618]; *Day* v. *Greene,* 59 Cal.2d 404 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; *Ornbaun* v. *Main,* 198 Cal.App.2d 92 [17 Cal.Rptr. 631]), and should be imposed here. J-A-C will remain indebted for the Thompson and Acme Sash Balance loans. Equitable consideration is given to Prices' original contribution by the $10,000 reduction allowed against the $92,281.88 owing to J-A-C.

3) *Should Price account for profits made in transactions he entered into while an officer, director and attorney for J-A-C?* No.

While associated with J-A-C, Price profited $120,000 through personal real estate investments. The trial court determined the evidence did not justify an accounting. █ The rule regarding corporate opportunities is stated in *New* v. *New,* 148 Cal.App.2d 372, 384-385 [306 P.2d 987], quoting *Industrial Indem. Co.* v. *Golden State Co.,* 117 Cal.App.2d 519, 533 [256 P.2d 677]:

" 'Since the leading case of *Guth* v. *Loft,* 23 Del.Ch. 255 [5 A.2d 503], it has been generally accepted that a corporate officer or director may not seize for himself to the detriment of his company business opportunities in the company's line of activities which the company has an interest and prior claim to obtain, and that if he seizes them in violation of his fiduciary duty the corporation may claim for itself all benefits so obtained by him. . . . ▇ However this doctrine does not exclude the fiduciary from all business activity of his own in the field in which he works for others. ". . . The directors or officers of a going, solvent corporation cannot, however, engage in a competing business to the detriment of the corporation which they represent." 13 Am.Jur. 953, Corporations, § 999. To the same effect, 19 C.J.S. 160, Corporations, § 785 ; 3 Fletcher, Corporations (1947 rev.) 214-215, § 856; Ballantine on Corporations (1946 ed.) 203 et seq., § 79. ▇ The latter points out (p. 205) that the basis of the doctrine must be found "in the unfairness on the particular facts of a fiduciary taking advantage of an opportunity when the interests of the corporation justly call for protection," (to the same effect Prof. Scott in 37 Cal.L.Rev. 539, 551) and continues: "This calls for the application of ethical standards of what is fair and equitable to particular sets of facts. ▇ The question is indeed often a close one whether the fiduciary duty of loyalty of directors and officers requires them to offer a particular business opportunity which they discover in connection with the corporate business to the corporation . . . or whether they may take it for themselves. This turns . . . upon various factors as to the needs and situation of the corporation, its financial ability and fair expectation under the circumstances, which cannot be reduced to definite rules." Under these circumstances the decision in each case depends on its particular facts and citation of examples is not useful. The determination of the particular factual circumstances under which a fiduciary takes business opportunities for himself and the application of the ethical standards of fairness and good faith required from a fiduciary to said set of facts is mainly for the trier of the facts. ▇ Both the issues of good faith and of sufficient performance of contractual obligations are normally questions of fact (53 Am.Jur. p. 192, § 224; p. 231, § 273).' "

▇ The evidence of Thompson's unwillingness to invest in raw acreage other than the Sorrento property, of J-A-C's investment capital ratio, and the nature of J-A-C as an

investment tool not intended to restrict shareholder's personal investment, sufficiently supports the trial court's finding Price did not profit through usurping corporate opportunities.

## PRICE'S (AND J-A-C'S) APPEAL

Price makes five basic contentions:

■ 1) *The trial court improperly admitted evidence of sexual improprieties between Thompson and Price's wife.*

Price argues evidence of immoral acts is inadmissible to impeach a witness. The evidence, however, was properly admitted to show the confidential relationship between the Prices and Thompson of which Price took advantage.

2) *There is insufficient evidence to support the finding that Price dominated Thompson.*

Price argues the evidence, stressing Thompson's physical and mental health. The facts recited in this opinion, however, amply support this finding.

■ 3) *The trial court erred in admitting hearsay evidence of Thompson's state of mind.*

Price contends state of mind hearsay evidence is admissible only when mental state at the time the offered statements were made is a material issue, citing *Estate of Anderson,* 185 Cal. 700 [198 P. 407]. Statements of disenchantment with Price made by Thompson after consulting attorney Robinson, are admissible, even under this rule; Thompson's disenchantment was relevant in explaining the transfer of stock into and out of joint tenancy, which was material to the confidential relationship issue, and in applying the statute of limitations.

In *Whitlow* v. *Durst,* 20 Cal.2d 523, 524 [127 P.2d 530], furthermore, our Supreme Court said: "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving."

■ 4) *The trial court erred in admitting parol evidence regarding the Sorrento land purchase agreements.*

The purchase agreements included the two 12 percent future profit provisions Price misrepresented, to his advantage, to be necessary. The parties orally agreed to divide the remaining 76 percent future profits two-thirds Hills and one-third J-A-C. In other words, of total future profits, the Hills

were to get 50⅔ percent, J-A-C 25⅓ percent, Price 12 percent and Helmings 12 percent. The written agreements recite the interests as Hills 50 percent, J-A-C 26 percent, Price 12 percent and Helmings 12 percent.

Price complains of evidence showing he fraudulently represented the written agreements' figures were necessary for convenient bookkeeping, but upon sale the oral agreement was to control. The evidence, however, was not admitted to change the written agreements in violation of the parol evidence rule. The evidence was properly admitted because probative of Price's elaborate scheme to defraud his clients and friends.

5) *This action is barred by the statute of limitations* (*Code Civ. Proc., § 338, subd. 4*).

The Code of Civil Procedure, section 338, subdivision 4 provides a three-year limitation period for: "An action for relief on the ground of fraud or mistake. The cause of action in such case [is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Thompson did not begin to discover the fraud until October 1961. The Hills discovered the fraud when served with the cross-complaint. Plaintiffs filed the action timely in November 1963.

That part of the judgment failing to impose a constructive trust is reversed, with direction to the trial court to impose a constructive trust on the J-A-C stock held by the Prices, and require the Prices to endorse and deliver the stock to plaintiffs; the award of only $7,500 is reversed, with direction to enter an award to J-A-C against James F. Price of $82,281.88 ($92,218.88 — $10,000) of which amount Alice B. Price is jointly and severally liable for $16,800, and Louise Cord is jointly and severally liable for $11,180.88; in the other respects, the judgment is affirmed. James F. Price to bear costs on appeal.

Coughlin, J., and Lazar, J. pro tem.,* concurred.

The petition of the defendants, cross-complainants and appellants for a hearing by the Supreme Court was denied July 12, 1967.

---

*Assigned by the Chairman of the Judicial Council.